# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

*No. 13-112*

## DAVID-JOHN MCDONALD, *et al*,

### Plaintiffs - Respondents,

### v.

### ASSET ACCEPTANCE LLC,

### Defendant - Petitioner.

*Regarding a Fed.R.Civ.P. 23(f) petition for leave to appeal*
*a class certification order entered by the United States District Court*
*for the Eastern District of Michigan (Hon. Marianne O. Battani, presiding)*

*Case No. 1:11CV13080 (E.D.Mich.)*

## OPPOSITION TO PETITION FOR LEAVE TO APPEAL
## BY RESPONDENTS RYAN GUIMOND AND CATHERINE PETRILLI

Daniel A. Edelman
Cathleen M. Combs
Thomas E. Soule
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 South LaSalle Street, 18th Floor
Chicago IL 60603
(312) 739-4200
(312) 419-0379 (fax)
courtecl@edcombs.com

Adam G. Taub
ADAM G. TAUB & ASSOCIATES
    CONSUMER LAW GROUP, PLC
17200 West 10 Mile Road, Suite 200
Southfield MI 48075
(248) 746-3790
adamgtaub@clgplc.net

*Attorneys for respondents Ryan Guimond & Catherine Petrilli*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 13-112                    Case Name: McDonald v. Asset Acceptance LLC

Name of counsel: Thomas E. Soule

Pursuant to 6th Cir. R. 26.1, Ryan Guimond
*Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

Other than those disclosed by Asset Acceptance LLC, no.

CERTIFICATE OF SERVICE

I certify that on _____ September 3, 2013 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Thomas E. Soule

Counsel for Ryan Guimond

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 13-112                    Case Name: McDonald v. Asset Acceptance LLC

Name of counsel: Thomas E. Soule

Pursuant to 6th Cir. R. 26.1, Catherine Petrilli
*Name of Party*

makes the following disclosure:

1.      Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.      Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

Other than those disclosed by Asset Acceptance LLC, no.

CERTIFICATE OF SERVICE

I certify that on _____ September 3, 2013 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Thomas E. Soule

Counsel for Catherine Petrilli

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.    THE DISTRICT COURT'S ORDER WAS BASED ON
      AN EXTENSIVE AND CONVINCING RECORD . . . . . . . . . . . . . . . . . . 1

II.   ASSET MISREPRESENTS THE LAW CONCERNING WAIVER . . . . . . 7

      A.    The District Court correctly applied Delaware and Ohio law  . . . . . 8

      B.    Laws of other states support plaintiffs, and only
            become relevant if choice of law clauses select them . . . . . . . . . . . 10

III.  *COMCAST V. BEHREND* DOES NOT SUPPORT ASSET . . . . . . . . . . . 15

IV.   ONE-WAY INTERVENTION IS NOT AN ISSUE IN THIS CASE  . . . . 16

V.    CLAIMS REGARDING ARBITRATION COME TOO LATE  . . . . . . . . 17

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

## Cases

*A.J. Cameron Sod Farms v. Continental Insurance Co.*,
    700 A.2d 290 (N.H. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*A.W. Therrien Co. v. Maryland Casualty Co.*, 84 A.2d 179 (N.H. 1951) . . . . . . . 13

*Aeroglobal Capital Management LLC v. Cirrus Industries Inc.*,
    871 A.2d 428 (Del. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Ahne v. Allis-Chalmers Corp.*, 102 F.R.D. 147 (E.D.Wis.1984) . . . . . . . . . . . . . 16

*Amchem Products Inc. v. Windsor*, 521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . 18

*Baumann v. Capozio*, 611 S.E.2d 597 (Va. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Beattie v. CenturyTel Inc.*, 511 F.3d 554 (6th Cir. 2007) . . . . . . . . . . . . . 16, 18, 19

*Butler v. Sears Roebuck & Co.*, ____ F.3d ____,
    2013 WL 4478200 (7th Cir. Aug. 22, 2013) . . . . . . . . . . . . . . . . . . . . . 15, 16

*Chesner v. Stewart Title Guaranty Co.*, No. 1:06CV476,
    2009 WL 585823 (N.D.Ohio Jan. 9, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Clevenger v. Dillard's Department Stores Inc.*,
    333 Fed. App'x 907 (6th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013) . . . . . . . . . . . . . . . . . . . . . . . 15

*Coventry Parkhomes Condo. Ass'n v. Fannie Mae*,
    827 N.W.2d 379 (Mich. App. Ct.. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Cutbirth v. Wyoming*, 751 P.2d 1257 (Wyo. 1988) . . . . . . . . . . . . . . . . . . . . . . . 13

*Funai v. Metropolitan Property & Casualty Co.*, 765 A.2d 689 (N.H. 2000) . . . 13

*Glidden v. Chromalloy American Corp.*, 808 F.2d 621 (7th Cir. 1986) . . . . . . . . 16

*Hamilton v. Williams*, 573 N.E.2d 1276 (Ill. App. Ct. 1991) . . . . . . . . . . . . . . . . 13

*Havlena v. Asset Acceptance LLC*, No. 2:11CV11122,
    Doc. 28 (E.D.Mich. Sept. 9, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hilfiger v. Transamerica Occidental Life Insurance Co.*,
    505 S.E.2d 190 (Va. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hyman v. First Union Corp.*, 982 F.Supp. 8 (D.D.C. 1997) . . . . . . . . . . . . . . . . . 16

*In re Delta Air Lines*, 310 F.3d 953 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Whirlpool Corp. Front-loading Washer Products Liability
    Litigation*, 678 F.3d 409 (6th Cir.2012), *later decision,*
    ___ F.3d ___, 2013 WL 3746205 (6th Cir. July 18, 2013) . . . . . . . . . 15, 16

*Johnson v. Meriter Health Services Employee Retirement Plan*,
    702 F.3d 364 (7th Cir.2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Johnson Associates Corp. v. HL Operating Corp.*,
    680 F.3d 713 (6th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Kentucky National Insurance Co. v. Empire Fire & Marine Insurance Co.*,
    919 N.E.2d 565 (Ind. App. Ct. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kreutzer v. Monterey County Herald Co.*, 747 A.2d 358 (Pa. 2000) . . . . . . . . . . 12

*Lambell Lumber Corp. v. Newstress International Inc.*,
    938 A.2d 1215 (Vt. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Mark-It Place Foods Inc. v. New Plan Excel Realty Trust Inc.*,
    804 N.E.2d 979 (Ohio App. Ct. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Marquette National Bank of Minneapolis v. First of Omaha Service Corp.*,
    439 U.S. 299 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Marta v. Mutual Life Ins. Co. of New York*, 887 F.Supp. 722 (D.Del. 1995) . . . . . 8

*McDonald et al v. Asset Acceptance LLC*, No. 2:11CV13080,
    2013 WL 4028947 (E.D.Mich. Aug. 7, 2013) . . . . . . . . . . . . . . . . . . . *passim*

*McMillen v. Willys Sales Corp.*, 193 N.E.2d 160 (Ohio App. Ct. 1962) . . . . . . . 9

*Mendez v. Radec Corp.*, 260 F.R.D. 38 (W.D.N.Y. 2009) . . . . . . . . . . . . . . . . . 17

*Miller v. Javitch Block & Rathbone*, 561 F.3d 588 (6th Cir. 2009) . . . . . . . . . . . 6

*Ohio ex rel Bell v. Brooks*, 955 N.E.2d 987 (Ohio 2011) . . . . . . . . . . . . . . . . . . . 8

*Palenick v. City of Rio Rancho*, ___ P.3d ___,
    2013 NMSC 029 (N.M. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Pennsylvania ex rel Corbett v. Griffin*, 946 A.2d 668 (Pa. 2008) . . . . . . . . . . . . 12

*Quality Products & Concepts Co. v. Nagel Precision Inc.*,
    666 N.W.2d 251 (Mich. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Randleman v. Fidelity National Title Co.*, 264 F.R.D. 298 (N.D.Ohio 2009),
    *aff'd*, 646 F.3d 347 (6th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ross [R.] v. Bank of America NA*, No. 1:05CV7116,
    Doc. 216 (S.D.N.Y. Mar. 18, 2010), and
    Doc. 251 (S.D.N.Y. July 22, 2010),  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Ross [S.] v. RBS Citizens NA*, 667 F.3d 900 (7th Cir. 2012);
    *vacated and remanded* 133 S.Ct. 1722 (2013). . . . . . . . . . . . . . . . . . . . . . . . 16

*Sandler v. AII Acquisition Corp.*, 954 F.2d 382 (6th Cir.1992)  . . . . . . . . . . . . . 9

*Smith v. Marez*, 719 S.E.2d 226, 231 (N.C. App. Ct. 2011)  . . . . . . . . . . . . . . . 13

*Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) . . . . . . . . . . . . 18

*Stanley's Cafeteria Inc. v. Abramson*, 306 S.E.2d 870 (Va. 1983) . . . . . . . . . . . 11

*Terech v. First Resolution Management Corp.*,
    854 F.Supp.2d 537 (N.D.Ill. 2012)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Turner v. Miller Transporters Inc.*, 852 So.2d 478 (La. App. Ct 2003)  . . . . . . . . 13

*United States v. General Motors Corp.*, 929 F.2d 249 (6th Cir. 1991) . . . . . . . . . 6

*Warmack v. Arnold*, 961 N.E.2d 1165 (Ohio App. Ct. 2011)  . . . . . . . . . . . . . . . 8

*Wehrkamp v. Wehrkamp*, 773 N.W.2d 212 (S.D. 2009)  . . . . . . . . . . . . . . . . . . . 12

*Wilcox v. Vermeulen,* 781 N.W.2d 464 (S.D. 2010)  . . . . . . . . . . . . . . . . . . . . . 12

*Young v. Nationwide Mutual Insurance Co.*, 693 F.3d 532 (6th Cir. 2012) . . . . . 19

**Statutes and Rules**

Fed.R.Civ.P. 23  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15, 17

Fed.R.Civ.P. 23(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 18

Fed.R.Civ.P. 23(b)(3)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 18

Fed.R.Civ.P. 23(f)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18

15 U.S.C. §1692 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 14

26 U.S.C. §166(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

This Court should deny the Fed.R.Civ.P. 23(f) petition by Asset Acceptance LLC ("Asset") for leave to appeal from a class certification order entered by the United States District Court for the Eastern District of Michigan.[1]

## I.    THE DISTRICT COURT'S ORDER WAS BASED ON AN EXTENSIVE AND CONVINCING RECORD

Asset buys defaulted consumer debts from banks in bulk, for pennies on the dollar.  Many banks selling these debts to Asset chose to not charge interest after "charging off" the debts, as they did not want to pay for sending monthly statements, which are required if interest is added.  Nor did they want to increase the uncollectible bad debt on their books.  Thus, debts Asset bought included no interest from the date the banks charged off the debts to the date Asset purchased them.  The price Asset paid for the debts was two to six percent of their face amount on the banks' books; this amount did not include post-chargeoff interest.

Asset then retroactively imposed the interest that banks had elected not to add, and sought to collect it.  To illustrate: after buying a debt with a face value of $1,000 (as shown on the bank's books, and with no post-chargeoff interest), Asset would claim the debt was for $1,500 and demand this amount from the consumer – even though the bank (a) chose not to impose that interest and (b) therefore did not comply with the legal prerequisites for charging it (like sending monthly billing statements).  By falsely inflating the amount of debts in this way, Asset violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. ("FDCPA").

The District Court correctly certified a class of "all individuals from whom Asset Acceptance LLC attempted to collect a credit card debt, who had interest

---

[1] Citations to the opinion at issue – *McDonald et al v. Asset Acceptance LLC*, No. 2:11CV13080, Doc. 107, PageID 2992-3016; 2013 WL 4028947 (E.D.Mich. Aug. 7, 2013) ("Opinion") – and other parts of the District Court record, will be by document number and, where available, PageID number.

added by Asset Acceptance LLC to the claimed amount of the alleged debt, that

had not been added by the alleged owner of the debt prior to purchase by Asset

Acceptance LLC, at any time between July 15, 2010 and August 4, 2011."

(Opinion at 2994, 3016.)[2]  The record shows that banks' waiver of post-chargeoff

interest is a standard practice done for sound business reasons, and that Asset's

improper pursuit of the waived interest applied to all class members.

Asset's contract with World Financial Network National Bank ("WFNB")

sold debts owed by Ryan Guimond and 39,000 others.  Based upon the contract,

presented with plaintiffs' briefing, the District Court found that

> "there has been no post-chargeoff interest or fees added to the Unpaid
> Balance." (Doc. 69, Ex. 2, p. 395). The definition of "Unpaid Balance"
> explicitly states that it is the "total outstanding unpaid balance.... excluding
> post-chargeoff interest." (*Id.* at Ex. 2, p. 391). The agreement also provided
> that "purchaser represents and warrants to Seller that Purchaser's primary
> purpose in purchasing Charged-off Account is to attempt legal collection of
> the Unpaid Balances owed on such Charged-off Accounts." (*Id.*) [Opinion at
> 3008.]

Per testimony by Rhiana Brown, a WFNB representative, the Court found that,

> since 2003, WFNB stopped adding interest to accounts once they are
> charged-off as part of its normal business practice. ([Doc. 69] at Ex. 4, p.
> 34-35). [Ms. Brown] further added that this is a strategic business decision
> by WFNB, because continuing to charge interest requires WFNB to send
> periodic statements to account holders and incur additional costs. (*Id.* at Ex.
> 4, p. 60-61). [Opinion at 3009. See Doc. 71-4 (Brown Dep.), PageID 1875-
> 1878.]

Asset agreed to buy from Chase debts owed by Catherine Petrilli and 25,000

others.  The contract, according to the District Court's review of it,

> similarly excluded post-chargeoff interest from the definition of "Unpaid
> Balance." ([Doc. 69] at Ex. 2, p. 602). Further, it provided that "each
> charged-off Account is enforceable for the full Unpaid Balance.... and is the

---

[2] David-John McDonald was dismissed from the case by a prior order.  (See
Opinion, PageID 2994.)  The original creditor on Mr. McDonald's debt, unlike
many banks, imposed post-chargeoff interest.  Thus, collection attempts by Asset
on debts originated by that bank are not the basis for any class member's claims.
Asset's discussion of his claims (Petition at 9, 16) are not relevant here.

legal, valid and binding obligation of the Cardholder, enforceable in accordance with its terms and not subject to offsets or defenses." (*Id.* at Ex. 2, p. 604). It also stated: "Purchaser represents and warrants to Seller that Purchaser's primary purpose in purchasing Charged-off Accounts is to attempt legal collection of the Unpaid Balances." (*Id.* at Ex. 2, p. 602). [Opinion at 3008-3009.]

The District Court further found, per testimony by Thomas Henry, a Chase representative, that since 2005,

> Chase [did] not add interest to accounts once they are charged-off. ([Doc. 69] at Ex. 7, p. 15). Henry explained that this is a business decision that alleviates Chase's expense of sending periodic statements to account holders. Henry also testified that Chase believed it was good economics and considered it a "good customer practice." (*Id.* at Ex. 7, p. 16). In addition, in his experience, other credit card companies such as American Express chose not to impose interest once it charged-off an account. (*Id.* at Ex. 7, p. 18-19). [Opinion at 3009. See Doc. 71-7, PageID 1932-1933.]

Plaintiffs also presented evidence supporting the District Court's finding that at least seven other banks who sold debts to Asset, "CitiFinancial, Wachovia Bank Nevada, HSBC Bank, Wells Fargo Bank, Huntington National Bank of Ohio, Worlds' Foremost Bank of Nebraska, and PREMIER Bankcard LLC, all.... expressly excluded post-chargeoff interest from the definition of 'current balance' or 'unpaid balance'" in debt purchase agreements. (Opinion at 3009-3010.)

Asset gives no real response to the factual record. Its attempt to parse the testimony of Ms. Brown and Mr. Henry fails miserably; Asset's claim that the actions of WFNB and Chase were "equivocal" (Petition at 15) cannot withstand scrutiny.[3] Ms. Brown testified as follows:

> [Q]    On the first page of Exhibit 3 [to the deposition] there is a statement which I'll read for you from the second paragraph of the body of the letter. It says: "Please allow me to reiterate that World Financial Network Bank does not charge interest to any

---

[3] Asset's claim depends in part on Asset's partial quotation of Ms. Brown's testimony, to which counsel for plaintiffs objected on the grounds that Asset's questioning called for speculation and legal conclusions. (Exhibit A.) Asset's petition does not acknowledge these objections.

accounts once it has been written off / charged off."  Do you see that there?

*[Brown]*       *Yes.*

[Q]       Okay.  Is that statement, in fact, true?

*[Brown]*       *Yes.*

...

[Q]       What allows you to confirm that this is a true statement?

*[Brown]*       *I guess my history.  In terms of what I do on a daily basis is I manage post-chargeoff inventory, so I know for a fact that we do not charge interest post-chargeoff.  I also know that because in order to charge interest post-chargeoff, we would have to send a statement to the customer.  And we do not send statements to customers once an account has been charged off.*

...

[Q]       To your knowledge, how long has the policy been of World Financial to not send billing statements to a customer after the date of charge-off?

*[Brown]*       *Since 2003 when I assumed responsibility for post-chargeoff activity.*

...

[Q]       Between 2003 and the present, World Financial does not or has not charged interest on post-chargeoff accounts, is that right?

*[Brown]*       *Yes.*

[Q]       Is there a reason or reasons why?

*[Brown]*       *We chose not to at the time of charge-off.  It was just a practice that we chose not to do.*

              ...

              *[Our] standard operating procedures [involved] not charging post-chargeoff interest because we didn't want to incur the expense of... sending a statement to the customer.* [Doc. 71-4 at 21:24 – 24:24, 60:13 – 60:20, 61:6 – 61:18; PageID 1875, 1877-1878 (punctuation added for clarity).]

4

Mr. Henry gave similar testimony as to Chase's policy of not imposing post-chargeoff interest:

[Q]        You'll notice this first part of... that statement of subject matters for today's deposition [is] the imposition of interest in consumer credit card accounts after that date when those card accounts are charged off by Chase Bank.  Do you see that there?

*[Henry]        Yes.*

[Q]        Does Chase Card Services impose interest on consumer credit card accounts after those card accounts are charged off?

*[Henry]        No.*

[Q]        Why not?

*[Henry]        It's a policy decision we made.*

[Q]        What are the grounds for that policy decision?

*[Henry]        The basis for that would be several things.  One [is that] we would have to statement customers.... We also [are] looking at the recoverability of the interest that we would assess post-charge-off[.] [We] don't think that the economics would warrant us doing that.  Thirdly, we just think as a good customer practices we just made a decision not to assess post-charge-off interest....* [Doc 71-7 at 15:6 – 16:10; PageID 1932.]

Thus, the banks' decisions were made after considering business objectives, and concluding that they would be best served by ***not*** imposing post-chargeoff interest.  Asset fails to demonstrate otherwise.  As the Court held, the banks

had the absolute right to continue to impose interest on plaintiffs' delinquent accounts. **However, both took decisive and unequivocal acts to forgo the imposition of interest for strategic business reasons....** Instead of amassing interest on a worthless account, Chase and WFNB sought to sell the accounts and shift the risk of nonpayment to a third party for a nominal fee. This practice also permitted Chase and WFNB to remove the account from the financial records and receive a bad debt tax deduction. See [26 U.S.C.] §166(a)(2). This tradeoff leads to the reasonable inference that the original creditors' intended to waive interest. In addition, the purchase agreements explicitly stated that the accounts do not include post-chargeoff interest and are only enforceable up to the Unpaid Balance. [Opinion at 3010 (emphasis added).  See *id.* at 3009 (testimony regarding waiving interest in order to not send billing statements to debtors).]

5

Therefore, the District Court correctly found that the banks **"knowingly and intentionally waived their right to interest and sold the accounts in order to take advantage of favorable accounting practices."**  (*Id.* at 3010-3011.)

The consequence of the banks' waivers was that Asset's purchase of debts from the banks were subject to those waivers.  It is "undisputed that Asset stepped into the shoes of the original creditor when it purchased the debt, and took the debt subject to any existing waivers."  (Opinion at 2996 (citing *Terech v. First Resolution Management Corp.*, 854 F.Supp.2d 537, 541 (N.D.Ill. 2012)).)  It could not unwind the waiver after the assignment, for the rights of parties are fixed when assignment occurs.  *United States v. General Motors Corp.*, 929 F.2d 249, 252 (6th Cir. 1991); *Coventry Parkhomes Condo. Ass'n v. Fannie Mae*, 827 N.W.2d 379, 382 (Mich. App. Ct. 2012).  (See Opinion at 3012.)  Asset's attempts to do so anyway resulted in Asset violating the FDCPA by "misrepresenting the total amount of the debt in a state court pleading.... [which] is material, not merely a technicality."  (Opinion at 3016 (citing *Miller v. Javitch Block & Rathbone*, 561 F.3d 588, 596-597 (6th Cir. 2009).)  The claim that Asset "purchased and obtained all rights, title and interest" in the debts it purchased cannot be read to mean that it could take back the waiver committed by Chase, or WFNB, or other banks which did not impose post-chargeoff interest.  (Petition at 3.)

Asset's attempt to reduce the Opinion to a declaration that "the District Court's reasoning [was that] simply charging off a debt [establishes] that the creditor waived rights under the credit card agreement" is outlandish.  (Petition at 16.)  The contracts produced in discovery showing that banks waived post-chargeoff interest, and in the testimony of Ms. Brown and Mr. Henry, support the Court's findings.  Further, this holding does not require individualized inquiries,

6

contrary to Asset's claims. (Petition at 9-10 (citing, *inter alia*, *Randleman v. Fidelity National Title Co.*, 264 F.R.D. 298 (N.D.Ohio 2009), *aff'd*, 646 F.3d 347 (6th Cir. 2011).) The proof described by *Randleman*, 646 F.3d at 353 – "generalized proof... applicable to the class as a whole" – has been given.[4]

Thus, plaintiffs met, and exceeded, the requirements of Fed.R.Civ.P. 23. Whether class members share a common question (Fed.R.Civ.P. 23(a)(2)), whether that question predominates (Fed.R.Civ.P. 23(b)(3)), and whether deciding it for a class is superior to other claim resolution methods (*id*.), depends only on whether such a question *exists.* Answering that question is unnecessary. Yet plaintiffs have done both. "Class-wide liability depends on whether the original creditor waived interest" after the creditors charged off debts, which Asset imposed retroactively. (Opinion, PageID 3003.) Further, "this issue predominates over any individual issues such as damages or defenses Asset may assert during the course of litigation." (*Id.*) Resolving the question for thousands of people at one time is superior to individual lawsuits. (Opinion at 3002). Thus, the record shows that the District Court's holdings on class certification requirements were right.

## II.    ASSET MISREPRESENTS THE LAW CONCERNING WAIVER

Asset insists that the Court below had to review of the law of every state before deciding to certify a class. This is frivolous. Asset has identified no law that prevents banks from waiving their right to collect interest on credit card debts. Chase, WFNB and at least seven other banks were entitled to choose, for

---

[4] *Randleman* and *Chesner v. Stewart Title Guaranty Co.*, No. 1:06CV476, 2009 WL 585823 (N.D.Ohio Jan. 9, 2009) both dealt with claims that title insurers overcharged some consumers. The title insurers in both cases established in discovery that "title insurance is not necessarily – or even usually –purchased in connection with mortgages in Ohio," thus requiring review of each loan file to see if a consumer was overcharged. *Randleman*, 646 F.3d at 353; *Chesner*, 2009 WL 585823 at *8-*9. No such individualized inquiry is required here, however.

prudential reasons, to not impose post-chargeoff interest.  As such, no review of different states' laws is truly necessary.

To the extent that state law applies, cardholder agreements contain choice of law clauses. The only relevant laws are those of specified states (mainly Delaware, South Dakota, Ohio and Virginia).[5]  Those laws give no support to Asset.

### A.    *The District Court correctly applied Delaware and Ohio law*

The Court correctly held that the laws of Delaware (home to Chase) and Ohio (home to WFNB), when applied to the facts presented above, lead to a finding that those banks waived post-chargeoff interest.  Asset still relies upon *Mark-It Place Foods Inc. v. New Plan Excel Realty Trust Inc.*, 804 N.E.2d 979, 1000 (Ohio App. Ct. 2004), *Marta v. Mutual Life Insurance Co. of New York*, 887 F.Supp. 722, 727 (D.Del. 1995) and related cases.  However, the District Court correctly held that Asset wrongly conflated waiver (which requires no reliance by the party seeking to enforce the waiver) with estoppel (which generally does require reliance).  (Opinion at 3011.)  Decisions cited by the District Court (Opinion at 3007-3008) and plaintiffs (Doc. 70, PageID 1825) – including *Warmack v. Arnold*, 961 N.E.2d 1165, 1170 (Ohio App. Ct. 2011), *Ohio ex rel Bell v. Brooks*, 955 N.E.2d 987, 993 (Ohio 2011) and *Aeroglobal Capital Management LLC v. Cirrus Industries Inc.*, 871 A.2d 428, 444-445 (Del. 2005) – correctly hold that a waiver occurs when a right is intentionally relinquished.

The record shows, and the District Court correctly found, that the banks waived interest.  Any review of the documents produced, and the testimony taken,

---

[5]  Under *Marquette National Bank of Minneapolis v. First of Omaha Service Corp.*, 439 U.S. 299 (1978), banks can "export" the rates they can charge in their home states when they issue credit cards to consumers residing elsewhere.  Major credit card banks domiciled themselves in several states with favorable interest rate laws, and provided for application of the laws of their states of domicile.

8

would lead to the conclusion that the banks' conduct constituted "the voluntary and intentional relinquishment of a known right."  See *Aeroglobal*, 871 A.2d at 444. Asset cites no law saying that banks cannot do what WFNB, Chase and other banks did.

Asset misrepresents *Clevenger v. Dillard's Department Stores Inc.*, 333 Fed. App'x 907 (6th Cir. 2009) and *Sandler v. AII Acquisition Corp.*, 954 F.2d 382 (6th Cir.1992).  These cases, ultimately relying upon *McMillen v. Willys Sales Corp.*, 193 N.E.2d 160 (Ohio App. Ct. 1962), hold that a waiver occurs when a party "has been prejudicially misled or lulled into believing strict compliance is not required." *Sandler*, 954 F.2d at 385.  Asset misreads this to mean that this is the *only* way waiver occurs.  *McMillen,* 193 N.E.2d at 164, held otherwise:

> it is [often] difficult to discern from the pleadings whether the issue is waiver or estoppel.... In our view, in the absence of relevant evidence, it is not possible to determine whether waiver, estoppel, election or laches may or may not be applicable to the situation existing between the parties.  The following definition and distinctions are pertinent:
>
> A waiver is a voluntary relinquishment of a known right. It is a matter of intention with knowledge of the right involved. It may be by express words or by necessary implication.
>
> A waiver by implication cannot arise contrary to the intention of the parties unless the opposite party has been misled to his prejudice by the conduct of the party against whom the waiver is claimed **_or_** unless facts have developed which will work an estoppel.
>
> Waiver may be based upon consideration, estoppel, election, or [laches]. It may be by subsequent contract or by the acts and conduct of the parties.
>
> **The terms "estoppel" and "waiver" are often treated as interchangeable, and it has been said that waiver is only another name for estoppel. Undoubtedly, they are closely related, and this is particularly true as to implied waiver. Nevertheless, it is inaccurate to use them as convertible terms as they rest upon different bases. As stated above, a waiver is an intentional relinquishment, either expressly or constructively, of a known right. An estoppel arises when one is concerned in or does an act which in equity will preclude him from averring anything to the contrary, as where another has been innocently**

9

**misled into some injurious change of position**. [Citations omitted, emphasis added.]

### B.   Laws of other states support plaintiffs, and only become relevant if choice of law clauses select them

Asset tries to muddy the waters by claiming that the way some states define waiver precludes a finding that the conduct of the banks identified in this brief constituted waivers of post-chargeoff interest. Without evidence showing that a particular state's law would apply, this argument makes no sense. Credit card agreements have choice-of-law clauses in them. Most often, they call for the application of Delaware, Ohio, Virginia or South Dakota law. The laws of the designated states – and no others – are relevant here.

Asset did not identify for the District Court any state whose law (a) controls credit card accounts they bought and (b) differs from Delaware or Ohio law. It did not show the District Court how the laws of *any* states materially conflict on the issue of waiver; it only suggested that laws "will differ across the various states," without showing how. (See Doc. 87 at 20.) Asset's failure to develop this point should result in Asset's waiver of complaints about the District Court's failure to develop it for them. (Compare *id.*, and Petition at 9 and 14, to Doc. 95 at 3-4.)

The District Court found that, with respect to Ohio and Delaware law, Asset "mistakes plaintiffs' theory of implied waiver for that of waiver by estoppel."[6] (Opinion at 3011.) Asset repeats the mistake here regarding Virginia law, by claiming that "the concepts of implied waiver and estoppel are synonymous and both require reliance." (Petition at 12; see *id.* at 8-9.) In fact, the laws of Virginia are not materially different from the laws of Delaware or Ohio, contrary to Asset's

---

[6] Plaintiffs submit that the waiver by banks of post-chargeoff interest, as shown in this case, could be labeled either as "express" or "implied" waivers. Regardless of how it is phrased, the core question – whether the banks took an intentional action that constitutes waiver – has been clearly answered.

unsupported suggestion. For example, Asset relies in its petition – for the first time – on two Virginia cases from the 1970s. More recent case law shows that reliance is not required for a waiver to occur. *Baumann v. Capozio*, 611 S.E.2d 597, 599-600 (Va. 2005), discussed Virginia law at length:

> **We have repeatedly stated that waiver is the voluntary, intentional abandonment of a known legal right, advantage, or privilege. Essential elements of the doctrine include both knowledge of the facts basic to the exercise of the right and the intent to relinquish that right.**
>
> We have discussed the standard of proof that must be satisfied to establish that an implied waiver has occurred. We have stated in several cases that **waiver of a legal right will be implied only upon clear and unmistakable proof of the intention to waive such right for the essence of waiver is voluntary choice....**
>
> We recognize that this Court has used different legal phrases to describe the burden of proof necessary to establish an implied waiver – "the party relying on a waiver has the burden to prove the essentials of the waiver by clear, precise and unequivocal evidence" and "waiver of a legal right will be implied only upon clear and unmistakable proof of the intention to waive such right." Moreover, we stated in a case involving an express waiver that a waiver must be express, or, if it is to be implied, it must be established by clear and convincing evidence. In order to promote clarity and uniformity in our jurisprudence, in this case, and in future cases, **we will require that a litigant relying on an implied waiver prove the elements of such waiver by clear and convincing evidence.** [Citations omitted, emphasis added.]

Nowhere in this recitation of Virginia law is there a reliance requirement. A party can be deemed to have waived a right solely based on its own actions.

Further, *Stanley's Cafeteria Inc. v. Abramson*, 306 S.E.2d 870, 873 (Va. 1983) held that "estoppel" is distinguishable from waiver; one "lacking proof of detriment sustained in reliance upon [another's] conduct, cannot invoke the doctrine of **estoppel**.... [By contrast, the] focus of the **waiver** inquiry is upon intent to relinquish." (Emphasis added.) Just as held below (Opinion at 3011), estoppel and waiver are distinguished by "the intent of the waiving party. Reliance and prejudice are required insofar as a plaintiff argues an estoppel theory, where no

evidence of intent [to waive] is required." *Id.*  See *Hilfiger v. Transamerica Occidental Life Insurance Co.*, 505 S.E.2d 190, 193 (Va. 1998) (similar).

Asset did not discuss South Dakota law, either before this Court or the District Court.  Decisions from there yield the result found in Delaware, Ohio and Virginia.  *Wilcox v. Vermeulen,* 781 N.W.2d 464, 468 (S.D. 2010), held that,

> to create an **estoppel,** there must have been some act or conduct upon the part of the party to be estopped, which has in some manner misled the party in whose favor the estoppel is sought and has caused such party to part with something of value or do some other act relying upon the conduct of the party to be estopped, thus creating a condition that would make it inequitable to allow the guilty party to claim what would otherwise be his legal rights. [Citation omitted, emphasis added.]

Meanwhile, *Wehrkamp v. Wehrkamp*, 773 N.W.2d 212, 215 (S.D. 2009), held that

> a **waiver** exists where one in possession of any right, whether conferred by law or by contract, and of full knowledge of the material facts, does or forbears the doing of something inconsistent with the existence of the right or of his [or her] intention to rely upon it.... To support the defense of waiver, there must be a showing of a clear, unequivocal and decisive act or acts showing an intention to relinquish the existing right. [Citations omitted, emphasis added.]

Asset attempts to muddy the waters even further by mentioning, for the first time, the laws of states that have no relation to this case.  A state's law is relevant if agreements linked to debts they purchased had choice-of-law clauses adopting that state's law.  Asset never says that this has happened.  Indeed, there is ***nothing*** showing that the laws of the states Asset names apply to ***any*** debts that Asset attempted to collect from class members.  In any event, Asset completely fails to recognize that "waiver" and "estoppel" are two distinct concepts in the laws of many states.  See, *e.g.*, *Kreutzer v. Monterey County Herald Co.*, 747 A.2d 358, 361 (Pa. 2000) (estoppel requires reliance); *Pennsylvania ex rel Corbett v. Griffin*, 946 A.2d 668, 679 and 679 n.12 (Pa. 2008) (waiver does not); *Palenick v. City of Rio Rancho*, ___ P.3d ____, 2013 NMSC 029, ¶14 (N.M. 2013) ("waiver is the

12

intentional... relinquishment of a known right.... [Estoppel] depends only upon what one's conduct has caused another party to do, and is justified because the estopped party reasonably could expect that his actions would induce the reliance of the other party"); *Lambell Lumber Corp. v. Newstress International Inc.*, 938 A.2d 1215, 1220 (Vt. 2007) ("a party to a contract may lose the right to assert a term of the contract, or to require performance of a part of the contract, by waiver *or* estoppel" (emphasis added)).[7]

Asset even attempts to suggest that New Hampshire law, which governed the loan of Mr. McDonald, could differ from Delaware or Ohio law. (Petition at 8-9) It cites no New Hampshire law, however. In fact, *Funai v. Metropolitan Property & Casualty Co.*, 765 A.2d 689, 691-693 (N.H. 2000), rejects Asset's view:

> The plaintiffs urge us to find that by consenting to settlement of the underlying personal injury claim, Metropolitan waived its right to a trial to resolve the plaintiffs' insurance claim.
>
> ...
>
> We will not find **waiver** of such a right without a clear expression by a party to do so. See *A.W. Therrien Co. v. Maryland Cas. Co.*, [84 A.2d 179, 182 (N.H. 1951)] ("waiver is the voluntary or intentional abandonment or relinquishment of a known right")....
>
> The plaintiffs also argue that Metropolitan is estopped from denying consent to arbitrate. "The plaintiff bears the burden of establishing the elements of an estoppel claim." *A.J. Cameron Sod Farms v. Continental Ins. Co.*, [700 A.2d 290, 294 (N.H. 1997)]. An **estoppel** claim requires the proponent to prove four elements:

---

[7] Plaintiffs also identified, for the District Court, supporting law from other states. See Doc. 70, PageID 1824-1825 (citing definitions of waiver found in *Quality Products & Concepts Co. v. Nagel Precision Inc.*, 666 N.W.2d 251, 258 (Mich. 2003); *Hamilton v. Williams*, 573 N.E.2d 1276, 1283-1284 (Ill. App. Ct. 1991), *Smith v. Marez*, 719 S.E.2d 226, 231 (N.C. App. Ct. 2011) (discussing New York law), *Kentucky National Insurance Co. v. Empire Fire & Marine Insurance Co.*, 919 N.E.2d 565, 595 (Ind. App. Ct. 2010) (discussing Kentucky law), *Turner v. Miller Transporters Inc.*, 852 So.2d 478, 487 (La. App. Ct. 2003), and *Cutbirth v. Wyoming*, 751 P.2d 1257, 1262 (Wyo. 1988)).

> first, a representation or concealment of material facts made with knowledge of those facts; second, the party to whom the representation was made must have been ignorant of the truth of the matter; third, the representation must have been made with the intention of inducing the other party to rely upon it; and fourth, the other party must have been induced to rely upon the representation to his or her injury. [Emphasis added.]

Thus, under whatever relevant law, the banks intentionally waived post-chargeoff interest, as was their right. Asset bought those debts subject to those waivers, and with full knowledge of them. Asset, as the assignee, stood in the creditors' shoes. It could not roll back the prudential policies of WFNB, Chase or any other creditor that did not charge post-chargeoff interest. Its attempt to do this was an act implemented, in the same way, against thousands of people contrary to the FDCPA. Class members suffered from the same foul, and can obtain relief through a single action, rather than the expense involved with thousands of suits.

Given the preceding, the grocery list of issues Asset attempts to raise can be disregarded. (Petition at 17.) This case does not call for onerous individualized inquiries. All that is required is (a) investigation of the contracts which sold debts from banks to Asset, (b) review of choice-of-law provisions in credit card agreements, and (c) review of computerized records to determine who is in the class, and how much money Asset improperly took from each of them.[8]

---

[8] The claim that plaintiffs "made no attempt to identify other creditors who necessarily fall within their unlimited class definition or to identify what other states waiver laws are implicated by their unlimited nationwide class" is ridiculous. (Petition at 8-9.) The record shows that plaintiffs attempted to obtain contracts that would fully answer that question. However, Asset was able to limit the production of contracts it entered into with banks, notwithstanding a motion to compel a more complete production. (Doc. 62, PageID 980-981.) Further discovery was to have taken place after the certification order was entered, in line with the prior order. (*Id.*) Asset's petition for leave to appeal came first.

### III.   *COMCAST V. BEHREND* **DOES NOT SUPPORT ASSET**

Asset relies upon *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013)

for the proposition that the Opinion

> raises questions that have legal significance beyond this case, including
> when a court correctly finds that the alleged "common" and "predominant"
> legal issues in the case are governed by the laws of multiple states: (1) is it
> the plaintiff's burden to establish that the laws of those states are materially
> the same such that Rule 23's commonality, predominance, and superiority
> requirements are satisfied; and (2) is the court required to perform a
> "rigorous analysis" of the various states' laws to determine whether (a)
> commonality and predominance are satisfied and (b) whether a class action
> is the superior method of adjudication?

After *Comcast*, the Supreme Court summarily remanded three cases for

reconsideration in light of the decision.  One of these was *Butler v. Sears Roebuck*

*& Co.*, ___ F.3d ___, 2013 WL 4478200 (7th Cir. Aug. 22, 2013), which

considered whether a national class of consumers complaining about defective

washing machines can be certified.  Relying in part on this Court's own

consideration of *Comcast* on remand (*In re Whirlpool Corp. Front-loading Washer*

*Products Liability Litigation*, ___ F.3d ___, 2013 WL 3746205 (6th Cir. July 18,

2013)), *Butler* addressed Asset's argument directly:

> there is a single, central, common issue of liability: whether the Sears
> washing machine was defective. Two separate defects are alleged....
> [concerning] mold [and a defect in] the control unit. Each defect is central to
> liability. **Complications arise from the design changes and from separate**
> **state warranty laws, but can be handled by the creation of subclasses.**
> See, *e.g.*, *Johnson v. Meriter Health Services Employee Retirement Plan*,
> [702 F.3d 364, 365 (7th Cir.2012)] (10 subclasses). These are matters for the
> district judge to consider in the first instance, and Sears will be able to
> present to her the evidence it's obtained since the district judge ruled on
> certification almost two years ago....
>
> Shortly before our original decision, the Sixth Circuit had upheld the
> certification of a single mold class in a case identical to this one (the
> defendant, Whirlpool, was the manufacturer of the defective Kenmore-brand
> washing machines), except that it did not involve the other claim in our case,
> the control unit claim. [*In re Whirlpool*, 678 F.3d 409 (6th Cir.2012).]
> Whirlpool sought *certiorari*, and the Supreme Court granted it, vacated the
> court of appeals' judgment, and remanded the case, just as in our case.... On

15

remand the Sixth Circuit, denying as we have done the defendant's motion to remand to the district court, and interpreting *Comcast* as we do, concluded that the requirement of predominance had been satisfied. *In re Whirlpool*, 2013 WL 3746205 at \*2, \*16-\*19. The concordance in reasoning and result of our decision and the Sixth Circuit's decision averts an intercircuit conflict. [*Butler*, 2013 WL 4478200 at \*5 (emphasis added).]

*Butler*, *id*, also reiterated the fact that differences between class members, as to the amount of damages they would receive, is no bar to certification of a class:

if the issues of liability are... common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, **the fact that damages are not identical across all class members should not preclude class certification.** Otherwise defendants would be able to escape liability for tortious harms of enormous aggregate magnitude but so widely distributed as not to be remediable in individual suits. [Emphasis added.][9]

See *Beattie v. CenturyTel Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (same).

## IV.   ONE-WAY INTERVENTION IS NOT AN ISSUE IN THIS CASE

Asset's claims about "one-way intervention" are tardy. (Petition at 20 n. 2.) Asset agreed to brief class certification and summary judgment at the same time. (Doc. 77, PageID 2134-2135.) Asset could have sought an order requiring certification before any decision on the merits. However, by moving for summary judgment instead, Asset "cannot complain about either the treatment of the case as an individual action or the 'one-way intervention' that will result if the class should be certified at a later time." *Glidden v. Chromalloy American Corp.*, 808 F.2d 621, 625 (7th Cir. 1986). Other courts have so held – including *Ahne v. Allis-Chalmers Corp.*, 102 F.R.D. 147, 151 (E.D.Wis.1984) ("the courts have carved out a limited exception for those defendants willing to forego the protections attendant on early determination of the class issue"); *Hyman v. First Union Corp.*, 982 F.Supp. 8, 11

---

[9] The third case remanded from the Supreme Court for consideration of *Comcast* was *Ross v. RBS Citizens NA*, No. 10-3848, 667 F.3d 900 (7th Cir. 2012); *remanded*, No. 12-165, 133 S.Ct. 1722 (2013). On remand, the parties settled. *Ross*, No. 10-3848, Doc. 43 (7th Cir. June 4, 2013). Thus, Courts of Appeals have essentially completed work on the cases the Supreme Court remanded.

(D.D.C. 1997) (waiver where "both parties cooperated with [the] court... so that... summary judgment... would be ripe at the same time the court would be considering the class certification issues"); and *Mendez v. Radec Corp.*, 260 F.R.D. 38, 44-49 (W.D.N.Y. 2009) (collecting cases).

## V.    CLAIMS REGARDING ARBITRATION COME TOO LATE

Asset cites a related case where an arbitration clause was enforced (*Havlena v. Asset Acceptance LLC*, No. 2:11CV11122, Doc. 28 (E.D.Mich. Sept. 9, 2011)), and suggests it precludes class treatment here.  (Petition at 18-19.) This is wrong.

Asset does not explain why it did not move to compel Mr. Guimond or Ms. Petrilli to arbitrate their claims when – before any significant event occurred in this case – Asset obtained such a ruling in *Havlena*.  Nor does Asset explain why it has not waived its right to seek arbitration of claims, through its litigation of this case for over two years.  Per *Johnson Associates Corp. v. HL Operating Corp.*, 680 F.3d 713, 717-721 (6th Cir. 2012), Asset has done precisely that, by "taking actions that are completely inconsistent with any reliance on an arbitration agreement... [and] delaying its assertion to such an extent that the opposing party incurs actual prejudice."  Clearly, Asset took its chances with litigating this case. It must live with the result.[10]

## VI.    CONCLUSION

Asset claims that the District Court "failed to conduct a rigorous analysis of the facts and law pertaining to the... requirements" of Fed.R.Civ.P. 23.  (Petition at

---

[10] This Court should take note of a national settlement in *Ross v. Bank of America NA*, No. 1:05CV7116, Doc. 216 (S.D.N.Y. Mar. 18, 2010), and Doc. 251 (S.D.N.Y. July 22, 2010), by which several large banks agreed to not enforce arbitration clauses found in their card agreements.

3.) Nothing could be further from the truth.  The Opinion's holding that commonality, predominance and superiority were shown is sound.

*Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998), as to Fed.R.Civ.P. 23(a)(2), that "at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What we are looking for is a common issue the resolution of which will advance the litigation."  That is present here.  Per *Beattie,* 511 F.3d at 564, if "issues... are subject to generalized proof, and thus applicable to the class as a whole," predominance under Fed.R.Civ.P. 23(b)(3) has been shown.  That has happened in this case.  *Beattie*, *id*. at 566-567, followed *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 617 (1997) and held, as to superiority, that "the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." This case gives an example of the problem that *Beattie* resolves in favor of certification.  Asset's attempt to get a different result is in vain.

*In re Delta Air Lines*, 310 F.3d 953, 959-960 (6th Cir. 2003), held that a Fed.R.Civ.P. 23(f) appeal "is never to be routine. The sheer number of class actions and the unfortunately lengthy period necessary to complete an appeal weigh against permitting interlocutory appeals... which involve the application of well-established standards to the facts of a particular case."  The standards set forth in *Beattie*, *Sprague* and other cases have been met here in spades.  No factor described in *Delta* for granting a Rule 23(f) petition have been met.

The decision to certify a class is not the "death-knell" of the litigation – which, as defined by *Delta*, *supra*, leads to "a recognition that the costs of continuing litigation for either a plaintiff or defendant may present such a barrier

18

that later review is hampered." In this case, the costs of further litigation will not be unduly onerous, as a decision on the merits has also been given; likewise, the overall posture of the case makes class certification proper at this stage. Nor does this case raise any truly novel issues. Finally, the Opinion came after exhaustive briefing and an oral argument (see Doc. 109), based upon extensive written and oral discovery that was presented to the Court for review. A well-founded decision followed. Asset's displeasure at the outcome is not grounds for reversal.

Class certifications may be reversed "only upon a strong showing that the district court's decision was a clear abuse of discretion." *Beattie*, 511 F.3d at 559-560. *Accord, Young v. Nationwide Mutual Insurance Co.*, 693 F.3d 532, 536 (6th Cir. 2012). Asset comes nowhere close to showing that any holding of the District Court was clearly erroneous on the facts, on the law, or in its judgment.

Therefore, plaintiffs respectfully suggest that the petition for leave to appeal should be denied.

DATED: September 3, 2013                       Respectfully submitted,

                                               /s/ Thomas E. Soule
                                               Thomas E. Soule

Daniel A. Edelman                              Adam G. Taub
Cathleen M. Combs                              ADAM G. TAUB & ASSOCIATES
Thomas E. Soule                                    CONSUMER LAW GROUP, PLC
EDELMAN COMBS LATTURNER                         17200 West 10 Mile Road, Suite 200
    & GOODWIN, LLC                              Southfield MI 48075
120 South LaSalle Street, 18th Floor           (248) 746-3790
Chicago IL 60603                                adamgtaub@clgplc.net
(312) 739-4200
(312) 419-0379 (fax)
courtecl@edcombs.com

*Attorneys for respondents Ryan Guimond and Catherine Petrilli*

## CERTIFICATE OF COMPLIANCE

I, Thomas E. Soule, counsel for Ryan Guimond and Catherine Petrilli, hereby certify that the preceding brief was timely filed pursuant to Fed.R.App.P. 5(b)(2) and 26(a)(1), in that the petition for leave to appeal was filed on August 21, 2013, and this brief was filed on September 3, 2013.

I also certify that this brief complies with Fed.R.App.P 5(c), in that it is 19 pages long (exclusive of the disclosure statements, the tables of contents and authorities, and the certificates of counsel).  Further, this brief uses Times New Roman, 14-point typeface, in line with Fed.R.App.P. 32(a)(5) and 32(a)(6).

/s/ Thomas E. Soule
Thomas E. Soule

## CERTIFICATE OF SERVICE

I, Thomas E. Soule, hereby certify that this brief was filed on September 3, 2013 through the Court's electronic filing procedures, that the brief was electronically served upon Theodore Seitz (counsel for petitioner) by operation of those procedures, and that three copies of the brief was served upon Mr. Seitz by mail at the following address:

Theodore Seitz
Dykema Gossett PLLC
201 Townsend Street, Suite 900
Lansing MI 48933
tseitz@dykema.com

/s/ Thomas E. Soule
Thomas E. Soule

David-John McDonald, et al.
Asset Acceptance, LLC

Rhiana Brown, Confidential
July 31, 2012

# *EXHIBIT A*

Page 59

5  Q.      Are you aware of anything that would
6  preclude Asset Acceptance from charging interest
7  on accounts that it purchased from World
8  Financial?
9        MR. SOULE: Objection.  Foundation.
10  Speculation.  Also legal conclusion.
11  A.      No.

9   Q.      Are you -- have there been instances in
10  your knowledge where World Financial would have
11  waived particular rights in the accounts --
12        MR. SOULE: Objection.  Legal
13  conclusion.  Also calls for speculation.
14  Q.      I'm sorry.  Let me start over.
15        Are you aware of any instances in which
16  World Financial would have waived any of its
17  rights in accounts it was selling to an entity
18  like Asset?
19        MR. SOULE: Objection.  Legal
20  conclusion.  And speculation.
21  A.      No.